STATE OF MISSOURI, at the Relation of ROGERSVILLE REORGANIZED SCHOOL DISTRICT No. R-4, of WEBSTER COUNTY, MISSOURI, Relator, v. W. H. HOLMES, State Auditor of Missouri, Respondent.

STATE OF MISSOURI, at the Relation of REORGANIZED SCHOOL DISTRICT No. 5, of WASHINGTON COUNTY, MISSOURI, Relator, v. W. H. HOLMES, State Auditor of Missouri, Respondent, Nos. 43404 and 43405—253 S. W. (2d) 402.

Court en Banc, December 18, 1952.

*Robert B. Fizzell, Robert B. Fizzell, Jr.,* and *Stinson, Mag, Thomson, McEvers & Fizzell* for relators.

*J. E. Taylor,* Attorney General, and *Richard F. Thompson,* Assistant Attorney General, for respondent.

HOLLINGSWORTH, J.—These cases came to the writer on reassignment. Each is an original proceeding in mandamus brought by the relator as a reorganized school district to compel the State Auditor to register and certify as valid, under the provisions of § 108.240, RSMo 1949, V.A.M.S., certain school bonds issued by it and which it now desires to sell, to-wit:

(a)    In the instance of relator Rogersville Reorganized School District No. R-4, of Webster County, Missouri, bonds in the principal amount of $40,000, all dated March 1, 1952; and

(b)    In the instance of relator Reorganized School District No. 5, of Washington County, Missouri, bonds in the principal amount of $25,000, all dated May 1, 1952.

The State Auditor refuses to register and certify as valid the bonds of both relators upon the sole ground that neither of them is lawfully organized under the law enacted in 1947 authorizing the reorganization of school districts, §§ 165.657 to 165.707, RSMo 1949, V.A.M.S. His contention is based upon the admitted failure of each relator to comply with a certain provision of the law. These provisions are different, yet they are of the same general import and present essentially the same issue: whether in the process of the organization of each relator, its failure to comply with a provision of a time schedule set forth in the law rendered its attempted organization invalid. It is admitted that if the respective provision of the schedule with which each relator failed to comply is mandatory, then its bonds are not subject to registration and certification as valid; but that, if the provision is directory only, then its bonds are entitled to registration and certification.

The reorganization law became effective July 18, 1948. Its purpose was to promote the rapid merger of the multitude of small, inadequately equipped and financed school districts of this State into fewer and larger districts with financial resources to provide adequate buildings, teaching staffs and equipment. To give impetus to the movement and to impress its urgency upon the officials charged with effectuating it, the act sets forth a time schedule within which each of the procedures therein provided is to be taken. Insofar as pertinent, these provisions, briefly summarized, are:

(a) Within *sixty days* after the act becomes effective, the county superintendent of schools shall call a meeting of the directors of the school districts in his county for the purpose of electing a county board of education (§ 165.657).

(b) Within *four days* after its election, the county board of education shall meet, elect a president, and take the oath of office (§ 165.660).

(c) Within *six months* after its organization the county board of education shall make or cause to be made and completed a comprehensive study of each school district of the county and prepare a plan of reorganization (§ 165.673[1]).

(d) Upon completion of the comprehensive study, *but not later than May 1, 1949,* the county board shall submit to the state board of education a specific plan for the reorganization of the school districts of the county (§ 165.673[2]). (It is the time element of this provision that involves the validity of Rogersville Reorganized School District No. R-4, of Webster County.)

(e) Within *sixty days* following receipt of the plan, the state board of education shall convey to the secretary of the county board its approval or disapproval of the plan (§ 165.677).

(f) If the plan is disapproved by the state board, the county board shall have *sixty days* to prepare a new plan and return it to the state board (§ 165.677).

(g) If the second plan is disapproved by the state board, the county board is required to propose and submit its own plan to the voters *on the first Tuesday in November, 1949* (§ 165.677).

(h) Within *sixty days* after the receipt of approval by the state board of the reorganization [404] plan, the secretary of the county board of education shall call an election in each proposed enlarged school district to vote on the proposition of forming the enlarged district (§ 165.680).

(i) If the first election results in the disapproval of the plan submitted, the county board of education shall prepare another plan and submit the same to the voters not sooner than one year *nor later than two years* after the disapproval of the first plan (§ 165.693). (It is the time element of this provision that involves the validity of Reorganized School District No. 5 of Washington County.)

In the organization of the Rogersville District (Case No. 43 404), its only non-compliance with the time schedule set forth in the act was its failure to submit its plan of reorganization to the state board of education not later than May 1, 1949, as required by Par. [2] of § 165.673. It did submit its plan to the state board on February 1, 1950, and the plan was thereafter duly approved by the board and adopted by the voters.

In the organization of Reorganized School District No. 5, of Washington County (Case No. 43 405), its only non-compliance with the time schedule set forth in the act was its failure to submit its second plan of reorganization (the first one having failed of adoption) to a vote not "later than two years after the date of disapproval of the

first plan'', as required by § 165.693. It was submitted to a vote and the election adopting it was held two years and five days after the first election.

In determining whether either of the provisions of the schedule with which each relator failed to comply is mandatory or directory, the '' 'prime object is to ascertain the legislative intention as disclosed by all the terms and provisions of the act in relation to the subject of legislation and the general object intended to be accomplished. Generally speaking, those provisions which do not relate to the essence of the thing to be done and as to which compliance is a matter of convenience rather than substance are directory, while the provisions which relate to the essence of the thing to be done, that is, to matters of substance, are mandatory.' 25 R.C.L. § 14 pp. 766, 767.'' State ex rel. Ellis v. Brown, 326 Mo. 627, 33 S.W. 2d 104, 107.

''As a general rule, a statute which regulates the manner in which public officials shall exercise the power vested in them, will be construed as directory rather than mandatory, especially where such regulation pertains to uniformity, order, and convenience, and neither public nor private rights will be injured or impaired thereby. If the statute is negative in form, or if nothing is stated regarding the consequence or effect of non-compliance, the indication is all the stronger that it should not be considered mandatory.'' Crawford's Statutory Construction, 1st Ed., 1940, § 266, pp. 529, 530. See also State ex inf. McAllister ex rel. Lincoln v. Bird, 295 Mo. 344, 351-352, 244 S.W. 938, 939.

''For the reason that individuals or the public should not be made to suffer for the dereliction of public officers, provisions regulating the duties of public officers and specifying the time for their performance are in that regard generally directory. A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statue, is such that the designation of time must be considered a limitation of the power of the officer.'' 3 Sutherland, Statutory Construction, 3rd Ed., 1943, p. 102. See also St. Louis County Court v. Sparks, 10 Mo. 117; State ex inf. Gentry v. Lamar, 316 Mo. 721, 725, 291 S.W. 457, 458; State ex rel. Acom v. Hamlet, 363 Mo. 239, 250 S.W. 2d 495.

The object and purpose of the law is to effect a general reorganization of the school districts of this State. It should be liberally construed to the end that its ultimate objective may be attained. State ex rel. Acom v. Hamlet, supra, 1. c. 498. And especially should this be done where no contention is made that any public or private right has been impaired or injured by mere tardiness of action.

It is readily apparent that the schedule was placed in the law primarily because the Legislature deemed a general reorganization of the school districts of this State to be of urgent need. But

it was the need that prompted the urgency. No suggestion is made that the need became any the less subsequent to expiration of the schedule. Surely, therefore, the Legislature did not intend that a belated or tardy compliance with either of these two provisions of the schedule would be construed to defeat the end to be accomplished when both are so clearly intended to expedite rather than to abort the fulfillment of the need. As stated in St. Louis County Court v. Sparks, 10 Mo. 117, 122: "It would be strange if a statute specifying an early day at which an act must be done with a view to its speedy execution, should be construed that the act could not be done at all after the day when the necessity for its performance is as great, if not greater, afterwards than before."

Furthermore, we think the act itself evinces an intention on the part of the Legislature that schools may be reorganized under the provisions of this law throughout the years to come regardless of the fact that the calendar schedule therein provided has expired. In Par. [3] of § 165.673, it is expressly provided that the county boards of education shall "continue to study the school system of the county and propose subsequent reorganization plans as conditions warrant." And, in § 165.693, which refers to the submission of a second plan, there is a final provision: "Any subsequent plan [after a vote on a second plan] shall not be submitted sooner than one year following the date on which the last vote on reorganization was taken." These provisions clearly contemplate reorganizations subsequent to the last date fixed by the calendar set forth in the law.

It should be noted that this opinion does not construe as directory the provisions of § 165.693 prohibiting submission of plans to a vote subsequent to the first plan submitted sooner than one year after the date of a vote disapproving a preceding plan. Those provisions, under certain circumstances, present a different question. State ex inf. Rice ex rel. Allman v. Hawk, 360 Mo. 490, 228 S.W. 2d 785.

We hold that the provision of the law with which each of the relators failed to comply is directory only and does not render invalid its organization and subsequent existence as a legal entity. It follows that our peremptory writ of mandamus should issue in each case as prayed.

It is so ordered. All concur except *Ellison, C. J.,* who dissents in separate opinion filed.

ELLISON, C. J. (dissenting).—I respectfully dissent from the holding in the principal opinion. In the Rogersville case, R.S. Mo. 1949, § 165.673(2), II Laws Mo. 1947, p. 373(2) required a county board of education to submit to the State Board of Education a specific plan for the initial reorganization of the school districts of the county *not later* than May 1, 1949. The county board failed to do so until February 1, 1950, which was *nine months* after the

dead line fixed by the statute. The sole question for decision in that case is whether this invalidated the reorganization of the county school district and school bonds issued by it.

The issue in the Washington County Reorganized School District case, turns on the proper construction of two statutes, R.S. Mo. 1949, §§ 165.677 and 165.693, V.A.M.S. The first of these statutes provides that if the State Board of Education rejects the county board's original plan of reorganization it shall return it to the county board, which may revise it and return it to the state board. If the latter again rejects the revised plan the county board may nevertheless present its own plan to the voters at an election to be held on the first Tuesday in November, 1949, which was November 7. This is the explicit requirement of the statute. But the record shows the election was not held on that date but on November 1, 1949, and that the plan failed to carry.

The other statute, Sec. 165.693, provides that if the proposed enlarged district plan [406] does not receive the required majority affirmative vote, the school districts shall remain as they were prior to the election, but the county board of election *shall* prepare another plan, which shall be submitted "to a vote in like manner as the first, *but not sooner than one year nor later than two years* after the date of disapproval of the first plan." [Emphasis mine]. Then the statute continues: "Any subsequent plan shall not be submitted sooner than one year following the date on which the last vote on reorganization was taken." A second election on the revised plan was held on November 6, 1951, which was five days later than the two year limit set by the statute.

Several cases have been cited by relators showing the liberal attitude adopted by our courts in construing the time element in such case. But in my opinion the more recent statutes have been more stringent in that regard. They mean what they say. They are reorganization statutes and explicitly provide for the successive steps to be taken, and *when*. But they do not foreclose further action altogether because the concluding sentence of Sec. 165.693 permits the submission of further organization plans at annual elections thereafter.

However, the binding effect of the reorganization statutes is shown by the ruling in State ex inf. Rice ex rel. Allman et al. v. Hawk, 360 Mo. 490, 494, 496, 228 SW. (2d) 785, 787-9 (7-9). In that case a special election was held on April 1, 1948, to divide a common school district into two parts, and to annex the two portions thereof severally to two consolidated districts. Both propositions were defeated. Thereafter another special election was called by the directors of the common school district to be held on March 31, 1949, to annex the whole thereof to one of the two consolidated school districts. On March 30, one day before the proposed special election of March

31, 1949, the board of directors of the common school district annulled it on the ground that Sec. 10484, R.S. 1939, I Laws Mo. 1947, p. 508, forbid the holding of the second election within two years after the first one of April 1, 1948. Nevertheless the election of March 31, 1949 was held and the proposition carried. But this court ruled it was invalid because it was held within two years after the first election.

It is stated in 29 C.J.S., § 198, p. 283, that "statutory provisions relative to the time or date for holding an election have been construed as mandatory * *." Likewise it is said in 18 Am. Jur. § 112, p. 250: "The prevailing view seems to be that where the date of an election is not left to the determination of officials, but is unequivocally fixed by statute, the provision is regarded as mandatory and the election officials have no authority to change the date. An election held at a time other than that prescribed will be held void * *. * * * Under a provision that a proposition once submitted and decided either way by a majority of the voters cannot be resubmitted within a period of two years, an election thereon held two days short of such period after the preceding election has been held void." Citing Battle Creek Brewing Co. v. Calhoun County, 166 Mich. 52, 131 NW. 160, Ann. Cas. 1912 D 946 and 90 Am. St. Rep. 62, note.

State ex inf. Stipp ex rel. School Dist. v. Colliver (Mo. Div. 1) 243 SW. (2d) 344, 349(4) declares: "The rule is that 'time and place * * * are of the substance of every election,' and failure to comply with the law in these particulars is not generally to be treated as a mere irregularity.' " Citing 2 Cooley on Constitutional Limitation (8 Ed.) p. 160; State ex rel. Fahrman v. Rose, 160 Mo. App. 682, 693, 143 SW. 502, 506(7). See also State ex inf. Mayes v. Goodwin (Mo. Div. 2) 243 SW. (2d) 353, 354(3).

Under the statutes and decisions cited and discussed it is my view that the alternative writ of mandamus in each of the two cases under adjudication, No's 43,404 and 43,405, was improvidently issued and that the same should be ordered quashed.