STATE of Missouri ex rel. John M. DALTON, Attorney General of Missouri, ex rel. R. C. STONUM, Joe H. McCollough, Carlos Hill, Archie Cox, J. A. Denton, William R. Morrow and Enlarged School District R–IV of Ray County, Missouri, Relators,

v.

REORGANIZED DISTRICT NO. II, CLINTON COUNTY, Missouri, J. A. Eames, Jerome Coleman, Paul Moore, C. L. Van Buren, Gerald Cross, and Reid DeMoss, Respondents.

No. 44386.

Supreme Court of Missouri, En Banc.

Dec. 9, 1957.

Wm. T. Thompson, Richmond, and John S. Lodwick, Excelsior Springs, for relators.

Gerald Cross and Pross T. Cross, Lathrop, and Walter A. Raymond, Kansas City, for respondents.

DALTON, Chief Justice.

This is an original proceeding in quo warranto. It involves a dispute between two reorganized school districts. Both districts claim the right to exercise jurisdiction over the territory in Ray County formerly comprising Benton School District No. 9 and Elmira School District No. 92. The action was instituted in this court by John M. Dalton, Attorney General, at the relation of Enlarged School District R–IV of Ray County (hereinafter referred to as relator district) and the members of its board of directors against Reorganized District No. II of Clinton County (hereinafter referred to as respondent district) and the members of its board of directors. The application for leave to file was filed in this court on April 20, 1954 and the information was filed May 10, 1954. The information describes the individual relators not only as members of the board of directors of relator district but also as residents and taxpayers of said district. They, therefore, participate in this action in the said several mentioned representative capacities. The ultimate purpose of the action is, of course, to determine which school district has legal authority to exercise jurisdiction in the disputed area claimed by both, and to oust the usurper, if any.

This court appointed Hon. G. Derk Green of Brookfield, Judge of the Twelfth Judicial Circuit, as a special commissioner to take the evidence on the issues joined on the merits of the cause and to report his findings of facts and conclusions of law. His report, finding the disputed issues in favor of relators, was filed in this court November 3, 1956. The commissioner found that "respondents have no lawful authority over the territory in dispute." He recommended that "the writ of ouster should be issued against respondents." The cause has since been briefed and argued in this court and was submitted here on September 30, 1957.

It is conceded that the action is a proper one to determine the issues in dispute be-

tween the mentioned districts. No questions are raised with reference to the pleadings. The legality of organization and valid existence of relator and respondent districts and that of the Ray County Board of Education is admitted.

Most of the facts upon which the legal conclusions herein turn are not in dispute. The events leading up to the mentioned dispute and the institution of the present action may be stated somewhat in chronological order, as follows:

The Ray County Board of Education was organized on September 4, 1948, under the provisions of Sections 165.657–165.707 RSMo 1949, V.A.M.S. On January 29, 1951, it submitted to the State Board of Education a specific plan for the reorganization of the school districts of Ray County, including the Benton and Elmira districts, common school districts hereinbefore referred to. This plan for reorganization was disapproved by the State Board of Education on February 13, 1951 and the plan returned to the secretary of the Ray County Board on February 17, 1951.

On February 23, 1951, a petition was filed for the creation of a consolidated school district to be known as Consolidated District No. 6, which proposed to include the disputed Benton district.

March 9, 1951, the Ray County Board submitted to the State Board its revised plan for reorganization of the school districts of Ray County, which plan included the Benton and Elmira districts.

On March 15, 1951, a petition was filed with the Board of Directors of the Benton district for the annexation of that district to respondent district. On April 3, 1951, an election was held on the annexation proposal and a majority vote was cast in favor of annexation. On the following day, April 4, 1951, respondent district accepted the annexation of the Benton district.

On April 6, 1951, an election was held on the petition to create Consolidated District No. 6 and a majority vote was cast in favor thereof.

On April 12, 1951, a petition was filed with the Board of Directors of the Elmira district for the annexation of that district to respondent district. The annexation proposal was voted on on April 28, 1951, and a majority vote cast in favor of annexation. On May 7, 1951, respondent accepted the annexation of the Elmira district.

On April 16, 1951, the State Board of Education disapproved and returned to the Ray County Board its revised plan of reorganization which had been submitted on March 9, 1951.

On May 4, 1951, the Ray County Board, as relator, filed quo warranto proceedings in the circuit court of Ray County against Consolidated School District No. 6 of Ray and Clay counties and their board of directors challenging the legality of the organization of said Consolidated District No. 6. The case was given number 6896 and was later consolidated with cases numbered 6893, 6894 and 6895, instituted by the directors of District No. 6, since all cases were pending in the said circuit court of Ray County between the same parties and involving the same issue, to wit, whether Consolidated District No. 6 of Ray and Clay counties was a legally created and existing school district. Thereafter, on February 25, 1952, the circuit court of Ray County entered a decree against Consolidated District No. 6, in case number 6896 finding it "null and void."

On June 27, 1952, the Ray County Board submitted to the voters of said county at an election its own plan for the reorganization of the school districts of the county. The plan was approved by a majority vote in seven out of nine proposed enlarged districts, including the relator district, which under the plan was a new enlarged district containing the Benton and Elmira districts hereinbefore mentioned.

From the foregoing it appears (1) that all of the prescribed statutory steps were

taken for the annexation of the Benton and Elmira districts to the respondent district; and (2) that all of the prescribed statutory steps were taken for the incorporation of the Benton and Elmira districts into the relator district. In these circumstances it is relators' contention that, since the Ray County Board of Education on January 29, 1951, submitted its first plan for reorganization of the school districts of Ray County, including the Benton and Elmira districts, and since each plan, thereafter, included the Benton and Elmira districts, the Ray County Board of Education first acquired jurisdiction of the territory comprising the Benton and Elmira districts, prior to any steps being taken to annex them to respondent district; and that this jurisdiction remained in effect and was exclusive until the said districts were finally incorporated into the relator district by the adoption, on June 27, 1952, of the Ray County Board's own plan for reorganization.

■ Relators rely upon the well established rule of law referred to as the doctrine of "prior jurisdiction." As for example, where under different statutes vesting jurisdiction in different persons or authorities, the same territory is subject to formation into a new municipality or to annexation to an existing municipality, the jurisdiction first invoked becomes exclusive and the proceedings may be carried on to a final termination. State ex rel. Fry v. Lee, 314 Mo. 486, 284 S.W. 129, 135; State ex inf. Goodman ex rel. Crewdson v. Smith, 331 Mo. 211, 53 S.W.2d 271, 273; State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, 779; State ex inf. Taylor ex rel. Oster v. Hill, Mo.Sup., 262 S.W.2d 581, 583; State ex rel. Corder School Dist. No. R–3 v. Oetting, Mo.App., 245 S.W.2d 157, 160; Willard Reorganized Dist. No. 2 of Greene County v. Springfield Reorganized School Dist. No. 12, 241 Mo.App. 934, 248 S.W.2d 435, 443(9). And see London Indep. School Dist. v. Thomerson, Tex.Civ.App., 223 S.W. 2d 314, 318. Relators insist that the purported annexations of the Benton and Elmira districts by respondent district were absolutely void and they ask an order ousting the usurper from exercising jurisdiction over the disputed territory.

Respondents do not question the doctrine of "prior jurisdiction" relied upon by relators, but contend that the Ray County Board of Education lost its jurisdiction over the Benton and Elmira districts by reason of "its long delays, abandonment, misleading tactics and adjudication of the issues against its present position." Respondents further say "the continuing jurisdiction of the Ray County Board depended upon diligence."

The points relied upon by respondents are (1) that the proceedings in the consolidated cases numbered 6893, 6894, 6895, and 6896 are res adjudicata herein and constitute a complete bar to this proceeding; (2) that relators are estopped to question the legality of the annexation of the Benton and Elmira Districts by their dilatory tactics and legal position taken in the previous litigation in the Ray County Circuit Court; (3) that the long delay of the Ray County Board of Education in forming relator district constituted an abandonment of the Board's right to exercise jurisdiction over the Benton and Elmira districts; (4) that relators were barred from bringing and maintaining this action by their own laches; and (5) that quo warranto is a discretionary writ and it should not be granted in this case because it is not in the public interest. We shall examine these contentions in the order stated.

■ As to the defense of res adjudicata, we have noted that after disapproval of the Ray County Board's first plan for reorganization (February 13, 1951) and prior to its submission of its revised plan (March 9, 1951) certain proceedings were started on February 23, 1951, for the formation of Consolidated District No. 6, which included the Benton district; and that a favorable vote on that proposition was had on April 6, 1951. On April 4, 1951, respondent district had also approved the annexation of the Benton district. On May 4, 1951, the Ray

County Board attacked the legality of the formation of Consolidated District No. 6 in an action in quo warranto in the Circuit Court of Ray County in case No. 6896 and asked ouster. Its position was sustained on February 25, 1952 and ouster was ordered. It will be noted from the facts hereinbefore stated that the Ray County Board of Education had obtained prior jurisdiction of the Benton school district before proceedings were started to form Consolidated District No. 6 or to annex the Benton district to respondent district. Case No. 6896 was, however, consolidated with other cases, including case No. 6894, on which respondents rely. Four of the individual relators in the present case, who are relators in their capacity as "residents and tax payers" and members of the Board of Directors of the relator district, were also relators in cases 6893, 6894 and 6895, but in a representative capacity as "resident taxpayers and members of the School Board of Consolidated District No. 6 of Ray and Clay Counties." The same parties in the same capacities (as directors of Consolidated District No. 6) were respondents in case No. 6896. They lost all of the cases. The information in case 6894 had attacked the validity of the annexation of the Benton district to the Reorganized District No. II of Clinton County (respondent district herein), and the answer in that case by respondent district herein alleged the lawful annexation of the Benton district to the respondent district. The court found for respondents therein and in cases Nos. 6893 and 6895 and denied ouster. At the same time and by the same judgment the court had found in case No. 6896 that Consolidated District No. 6 had no legal existence. In view of this finding the court could not find in favor of relators in the other three cases and its finding was of course for respondents therein.

Respondents herein now contend that all of the relators herein were "parties or in privity with parties in the Consolidated case" and particularly to the issues in case No. 6894, and that all are bound by the unsuccessful attack of the directors of Consolidated District No. 6, upon the annexation of the Benton district by respondent district. Respondents consider this finding (for respondents in 6894) as one on the merits of the cause in favor of respondent district establishing its right to exercise jurisdiction and control over the Benton district. Respondents say that the Ray County Board was a party to that decision by reason of being relator in case No. 6896. Respondents further "contend that the legality of the annexation of the Benton district by respondent district was in fact an issue and necessarily decided in case No. 6894"; and that the legality of the annexation of the Elmira district by respondent district could have and should have been presented and decided in the same case; and, therefore, that the issue as to the legality of said annexations is res adjudicata between relator district herein and respondent district. A further reason given is that four persons, who were relators in case No. 6894 as residents, taxpayers and directors of Consolidated District No. 6, where they received an adverse decision, are now relators herein as residents, taxpayers and directors of the relator district. Respondents' further theory is that privity exists between relator district and the Ray County Board since relator district owes its life to the Ray County Board and functions subordinate thereto; that the Ray County Board was a party to all of the issues in each of the four consolidated cases and is bound in each case; and that relator district is also bound.

Respondents also insist that "these same relators, or those with whom they are in privity were *the real parties in interest* in the Ray County Circuit Court litigation"; that relator district herein took over Consolidated District No. 6 of Ray and Clay Counties and became the successor to it, and succeeded to its rights and liabilities and is in privity with said district No. 6. We have seen, however, that in case No. 6896 the court held that "the purported Consolidation of District No. 6 of Ray County, Missouri is

null and void." In cases Nos. 6893, 6894 and 6895 brought by the directors of Consolidated District No. 6, as relators, while the finding was for respondents, the reason is clear.

Respondents do not question the rule that "Generally, in order to have estoppel by a former judgment (res adjudicata), there must be: (1) Identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made." Norwood v. Norwood, 353 Mo. 548, 183 S.W.2d 118, 122.

Respondents cite Hixson v. Kansas City, 361 Mo. 1211, 239 S.W.2d 341, 343, where it said: " * * * 'privity' depends more upon the relation of the parties to the subject matter than upon their connection as parties with or any activity in the former litigation. Generally speaking, privies are those legally represented at the trial. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity of interest is found to exist, all are alike concluded and bound by the judgment." Respondents also rely upon the doctrine of virtual representation. See Drainage District No. 1, Reformed of Stoddard County, v. Matthews, 361 Mo. 286, 234 S.W.2d 567, 572; Powell v. City of Joplin, 335 Mo. 562, 73 S.W.2d 408. The authorities do not aid respondents, since we find no identity of parties, interest or issues, and no virtual representation.

While an order of consolidation was entered as to the four mentioned cases, there is a separate entry *as to each case* in the judgment rendered on February 25, 1952. It will be noted that the Ray County Board of Education, relator in case No. 6896, sustained its position in that case and Consolidated District No. 6 was ousted. The Ray County Board was not a party to the issues presented by case No. 6894, wherein the directors of Consolidated District No. 6 sought to oust respondent district herein from the Benton district. Respondent district herein, who was respondent in case No. 6894, was not a party to case No. 6896, except for the purpose of the consolidation to try the common issue as to the legal existence of Consolidated District No. 6. Further, the four individual relators in the present case, while they were respondents in case No. 6896 and relators in case No. 6894, and received an adverse decision in each case, they did not appear in either of those cases in their representative capacity as members of the board of directors of the relator district herein. Relator district herein was not a party to case No. 6894; it was not then in existence. Although it was created as a result of the action of the Ray County Board's plan of reorganization, yet, if the Ray County Board is not bound, relator district is not bound. The Ray County Board won its suit by the court's decree that District No. 6 had no legal existence.

The fact that some of the directors of the relator district, who are parties relator herein in such representative capacity, were at one time purporting to act as directors of Consolidated School District No. 6, and the fact that such individuals in their purported representative capacity as directors of Consolidated School District No. 6, participated as relators in litigation in which certain judgments were entered against them cannot conclude either relator district herein or its directors in this action in which the individual relators are acting in a totally different representative capacity. Kirk v. Metropolitan Life Ins. Co., 225 Mo.App. 756, 38 S.W.2d 519, 521; Walker v. Manzke, 222 Mo.App. 816, 818, 10 S.W.2d 316; American Surety Co. of New York v. Normandy State Bank, 237 Mo.App. 39, 48, 167 S.W.2d 436, 439; State ex rel. Hospes v. Branch, 134 Mo. 592, 604, 36 S.W. 226.

In the Kirk case the court said: " * * * For the former suit to be res adjudicata of

this one, it would have been necessary for plaintiff in this action to have been a party to that action or that he be a privy in estate, in blood, or in representation to the parties in the former suit. Overshiner v. Britton, 169 Mo. 341, 350, 69 S.W. 17. There is no res adjudicata unless the second suit is not only between the same parties but between them in the same right or capacity." 38 S.W.2d 519, 521.

We must and do hold that relator district and the Ray County Board were not parties or privies to any cause wherein it was decided that the Benton district was legally annexed to respondent district. Nor were the individuals, who are relators here, either parties or privies in their representative capacity as directors of relator district. None are now foreclosed in this case by reason of the finding for the respondent district herein in case No. 6894 in the judgment entered in the consolidated cases.

The next three points relied upon by respondents will be considered together. Briefly stated they are estoppel by conduct, abandonment by inaction and prejudice by delay.

■ The information filed May 4, 1951, in case No. 6896, at the relation of the Ray County Board against Consolidated District No. 6, stated that a "legal election" had been held annexing the Benton district to the respondent district herein. Respondents insist that relators are now estopped by that allegation. The allegation was a legal conclusion, unnecessary to the issues in that case, no proof thereof was required and no decision was rendered on that issue by the court's judgment holding that the proceedings to form District No. 6 were null and void. While the recital may have been admissible as a statement against the interest of the Ray County Board (Simmons v. Kansas City Jockey Club, 334 Mo. 99, 66 S.W.2d 119, 122), it did not constitute a sufficient basis for estoppel by conduct against relators in this action. Further, the same information stated that the Ray County Board "was con-tinuing the study and proceedings to perfect a plan of reorganization for various school districts within said county, including the specific districts sought to be included in said petition for consolidation of District No. 6."

Respondents further rely upon the time schedule provisions of Sections 165.673–165.677 RSMo 1949, V.A.M.S. and refer to the lapse of time between the dates of the several steps taken by the Ray County Board leading to the formation of relator district. Respondents then say: "The dilatory and ineffective efforts of the Ray County Board to reorganize the schools of the county led these respondents into believing the Board was making no real effort to reorganize the schools"; that respondents took "the alternative method to get the job done"; and that relators acquiesced therein and approved and ratified the action taken by respondents. Respondents insist that the election bringing the relator district into existence on June 27, 1952, was two years and seven months late under the statutory provisions. Respondents also point to the evidence tending to show that, after the alleged annexation of the Benton and Elmira districts, the respondent district built three additional class rooms at a cost of $25,000, spent $26,242.03 extra in furnishing educational facilities for students from the annexed areas, hired extra teachers, expanded the school program and bought another school bus.

■ Respondents concede that, as a usual thing, the doctrine of equitable estoppel cannot be invoked against a municipal or public corporation as to the exercise of governmental functions, but respondents insist that exceptions are to be made, where right and justice demands it, as here, between one class of the public as against another class, citing Consolidated School Dist. No. 2 of Pike County v. Cooper, Mo. App., 28 S.W.2d 384, 386; Town of Montevallo v. Village School Dist. of Montevallo, 268 Mo. 217, 186 S.W. 1078, 1079, and other cases. In this case jurisdiction to proceed with reorganization was vested in the Ray

County Board when the mentioned expenditures were made.

On the issue of abandonment the respondents review the admitted facts showing the lapse of time prior to the formation of relator district on June 27, 1952 and insist that "the Ray County Board of Education should be held to have abandoned any jurisdiction it had over the Benton and Elmira Districts * * *." Respondents cite Mullins v. Eveland, Mo.App., 234 S.W. 2d 639, 642, where the court held that the record justified the conclusion that three school districts and the Superintendent had abandoned a plan of consolidation. The case is distinguishable on its facts.

On the issue of laches, respondents concede that the statutory time schedule for the reorganization of school districts has been held to be directory and not mandatory, but they insist that, under the facts of this case, the delay has been great and "these respondents have changed their position greatly and to their detriment." In this connection they also point to the lapse of time between the formation of the relator district and the institution of the present litigation on April 20, 1954, when the application for leave to file the information was presented to this court.

On the issue of laches and its application to municipal corporations and school districts, respondents cite State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, 399, 89 A.L.R. 607; Howard County v. Snell, 349 Mo. 386, 161 S.W.2d 238, 242; State ex inf. Otto ex rel. Harrington v. School Dist. of Lathrop, 314 Mo. 315, 284 S.W. 135, 139; State ex inf. Dalton ex rel. Erwin v. Taylor, Mo.App., 293 S.W.2d 12, 18; and other cases. Laches is only one branch of the subject of estoppel. Respondents urge the defense of estoppel, abandonment and laches on the ground that they were induced to change their position to their detriment as shown by their evidence and by reason of the delay and ineffective efforts of the Ray County

Board to complete the reorganization of the school districts of Ray County within the statutory period. Apparently respondents changed their position with a full knowledge of the Ray County Board's prior jurisdiction to reorganize the school districts of the county.

 The mere failure of the Ray County Board of Education to have complied with the time schedule provided in the Reorganization School District Act, Laws 1947, Vol. 2, p. 370, Section 165.657 et seq. did not render proceedings thereunder void, since the time schedule in the Act was directory and not mandatory. State ex rel. Reorganized School Dist. No. 5 of Washington Co. v. Holmes, 363 Mo. 760, 253 S.W.2d 402; State ex inf. Smoot ex rel. Kugler v. Boyer, Mo.Sup., 259 S.W. 2d 375. We must consider the particular facts presented. It will be noted that the first move looking toward the annexation of the Benton district to the respondent district was made by the filing of the petition for annexation on March 15, 1951. The election was held April 3, 1951, and the annexation accepted by respondent district on April 4, 1951. On March 9, 1951, the Ray County Board had submitted to the State Board its revised plan for reorganization of the school districts of Ray County, which plan included the Benton and Elmira districts. All of the steps relied upon by the respondents to show legal annexation of the Benton district to respondent district were taken after the Ray County Board's revised plan had been submitted and while the plan was under consideration by the State Board of Education and prior to the rejection of that plan on April 16, 1951. Jurisdiction over the disputed territory had been assumed and was being exercised by the Ray County Board of Education when annexation was attempted.

The proceedings for the annexation of the Elmira district to respondent district were begun on April 12, 1951, while the Ray County Board's revised plan was under consideration by the State Board. The

election favoring annexation was held April 28, 1951, and the acceptance by respondent district took place May 7, 1951. The State Board had the revised plan under consideration from March 9, 1951 to April 16, 1951. No evidence was offered tending to show that the period was an unreasonable one, or that the Ray County Board acquiesced or consented to the length of time taken by the State Board to consider and pass upon the revised plan. The plan, as we have stated, included the Benton and Elmira districts. While the first plan had not been submitted until January 29, 1951 (approximately one year and ten months late according to respondents), disapproval was not reported to the Ray County Board until February 17, 1951 and the revised plan was prepared and submitted March 9, 1951. The record clearly shows that the Ray County Board was proceeding with reasonable diligence prior to the time that any action was taken looking to the annexation of either the Benton or Elmira districts to respondent district. We must and do hold that, on the issue of school district reorganization, the jurisdiction of the territory comprising the Benton and Elmira districts was vested in the Ray County Board at the time the mentioned action was taken to annex these districts to the respondent district. Was that jurisdiction subsequently lost?

The record further shows, as stated, that after the revised plan was rejected by the State Board on April 16, 1951, the Ray County Board's own plan for reorganization was not submitted to the voters of Ray County until June 27, 1952, and no suit to determine jurisdiction of the Benton and Elmira districts was instituted by relators until the request for permission to file information was made on April 20, 1954. It was during this period, May 4, 1951, to February 25, 1952, that the litigation concerning the legal existence of Consolidated District No. 6 was pending and undisposed of. The Ray County Board could not reasonably proceed with reorganization

prior to the conclusion of that litigation. By the action the Ray County Board was asserting jurisdiction to proceed. Relator district did not come into existence until June 27, 1952. Under the facts shown by this record, we do not consider the period from February 25, 1952, to June 27, 1952, an unreasonable period within which to formulate and submit the Ray County Board's own plan for the reorganization of Ray County into nine reorganized districts. Nor do we consider the failure of the relators (under the facts shown) to institute the present action prior to April 20, 1954, satisfactory evidence of abandonment or of unreasonable delay. Further, the case of State ex rel. Reorganized School District No. 5 of Washington County v. Holmes, supra, was not decided by this court until December 18, 1952. Not until then had the time schedule provisions of the Reorganization act been held to be directory. On the record presented the defenses of estoppel, abandonment and laches must be denied.

Respondents finally contend, as stated, that quo warranto is a discretionary writ which should not be granted in this case because it is not in the public interest. Respondents cite State ex rel. McAllister v. Cupples Station Lt., Heat & Power Co., 283 Mo. 115, 223 S.W. 75, 84; State ex inf. Otto ex rel. Harrington v. School Dist. of Lathrop, supra, 284 S.W. 135, 140, and other cases. Respondents' position is that "school conditions" in the disputed territory would not be improved, but would be impaired; that the special commissioner's finding to the contrary is not binding on this court; and that any change in existing conditions will result in hardship to the affected communities. Respondents further rely on evidence tending to show that respondent district has expended money for improvements and educational facilities, as hereinbefore stated. Respondents say the school buildings in respondent district are fireproof and much better than those in the relator district; that the financial condition of respondent district is better than that of relator district; and that those parents in

**510**

the disputed districts who send their children to respondent district's school prefer to do so.

■ The record indicates, and our special commissioner found the facts to be, that relator district has from the date of its organization contended that the Benton and Elmira districts were within its boundaries; that relator district contended it was entitled to the revenue from those districts; and that it should supply the educational needs of the disputed territory. Relator district sought to and did transport a part of the students from the disputed districts to the school it maintained. It also sought to provide teachers and other facilities for that territory, but was prevented from doing so by the fact that the respondents hired the same teachers and assumed authority over the school buildings of the area. The evidence indicates that relator and respondent districts maintain adequate state approved schools; that each has the capacity and ability to improve its school system; and that there is not enough difference shown to warrant a finding that students of the disputed area would not be adequately provided for by either district. No sufficient reason appears why the writ of quo warranto should not issue in this case. From a review of the whole record it appears that jurisdiction to reorganize the school districts of Ray County became vested in and remained vested in the Ray County Board of Education; that the relator district was established while the Ray County Board had "prior jurisdiction"; and that no adequate reason appears from this record why the respondents should not be ousted from unlawfully exercising and asserting jurisdiction over the disputed territory. The writ should therefore be issued against respondents in so far as any control or authority over the territory formerly known as Benton School District No. 9 and Elmira School District No. 92 is concerned. It is so ordered.

All concur.