STATE of Missouri, Respondent,

v.

Jesse E. HOOVER, Appellant.

No. WD 36913.

Missouri Court of Appeals,
Western District.

Sept. 9, 1986.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 4, 1986.

Application to Transfer Denied
Dec. 16, 1986.

Sean D. O'Brien, Public Defender, E. Alice Beshoner, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Mary Stewart Tansey, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., SHANGLER, J., and MARTIN, Special Judge.

SHANGLER, Judge.

The movant Hoover appeals from the denial of an application for unconditional—or, alternatively, conditional—release from the Director of the Department of Mental Health, to whose custody and care he was committed under § 552.040.2, RSMo Cum. Supp. 1985, upon acquittal of first degree burglary by reason of mental disease or defect excluding responsibility.

The movant Hoover was committed to the Director by order of the circuit court on August 26, 1982, as a diagnosed schizophrenic paranoid. The procedures of statute then, as now, enable the person under such a commitment to apply for an order of release—conditional or unconditional—and then, upon denial, to reapply after the lapse of one hundred eighty days. The movant has engaged these procedures to apply for release as each successive right to apply accrued, and each, in turn, was denied after hearing.

The motion under review, the fifth in that succession, was brought *pro se* on July 30, 1984, and served upon the superintendent of the hospital of commitment and upon the prosecutor of the county of rendition of the criminal judgment, as required by then § 552.040.4, and the hospital and prosecutor each entered written objection within the time prescribed.[1] The *pro se* application for release was accompanied by a *pro se* motion for examination by a physician of choice under the provisions of then enacted § 552.040.4. The circuit court appointed the Public Defender as counsel for Hoover, and on October 26, 1984, a hearing was conducted on the application for release. Counsel promptly moved for the movant peremptory and unconditional release for failure to bring Hoover to a hearing within sixty days after the service of the written objections—as § 552.040.4 continues to direct. The court denied the motion, but granted the request by Hoover for continuance to accomplish the independent psychiatric examination requested by the movant. The physician of personal choice was not responsive, so Hoover requested examination at the Western Missouri Mental Health Center to determine fitness for release—despite the anomaly [noted to him by the court] of an examination—and hence trial evidence—by a facility under the supervision of an objector to the application for release. The movant then reinstated the original request for continuance to engage a private examiner, and the request was granted.

The proceedings resumed on March 22, 1985.[2] The movant presented three witnesses at the hearing: Dr. Henry R. Bratkowski, Jack Crow—guardian and uncle of the movant—and Hoover, himself. Dr. Bratkowski was a member of the staff at the Fulton State Hospital—the facility of internment—and treating psychiatrist to movant Hoover.[3] Dr. Bratkowski testified that Hoover suffers from paranoid schizophrenia, in remission under medication. He, nevertheless, could not recommend even conditional release because Hoover

1. The objection of the custodian Hospital was filed on July 30, 1984, the very day the *pro se* Hoover application was received by the circuit court, and the objection of the prosecutor was filed on July 27, 1984—three days before the official commencement of the action. The movant Hoover apparently formally notified the adverse principals of the intention to initiate the proceeding several days in advance of the event.

2. In the interim between October 26, 1984 [the original date of hearing], and the resumption of March 22, 1985, Hoover—on February 11, 1985—brought still another, the sixth, application for alternative unconditional or conditional release under § 552.040.4. That application, after written objections by the hospital and the prosecutor, was eventually merged with the antecedently pendent application for hearing on March 22, 1985.

3. There is no explanation why, despite the fastidious concern by the court to accommodate the request by Hoover for access to independent opinion, the actual resort was to evidence already adversely declared by the objection of the superintendent of the host facility.

had not completed the course of therapy prescribed to instill a sense of interpersonal cooperation essential to safe outpatient release. Dr. Bratkowski testified also that the illness remains in remission only as long as the medication is taken regularly, otherwise there is danger of relapse. The attitude of extreme distrust and negative imaginings Hoover harbors [and which mark the essential illness], the witness continued, do not augur well for safe release for himself and others, "if he got off the medicine." The uncle testified that he would find employment for Hoover should he be released. He acknowledged that in the past: "[W]hen he takes the medication everything is fine ... and it's only whenever, you know, he stops taking the medication, I think he feels that things are going good for him and he doesn't need it any more and he'll get off the medication, that's when he starts having a few problems." Hoover testified that he would observe the conditions of release—and take the medication, get a job and live with the uncle.

Hoover acknowledges that an applicant for release—*unconditional or conditional*—under Chapter 552 bears the burden to prove the facts essential to release:

> *No person shall be released* from such commitment *until it is determined* through the procedures provided in this

section *that he does not have and in the reasonable future is not likely to have a mental disease or defect rendering him dangerous to the safety of himself or others* or unable to conduct to the requirements of law. [§ 552.040.1, RSMo 1978, emphasis added]

The facts essential to proof for release—*unconditional as well as conditional*—under that section as then extant,[4] were that the applicant was free of the mental disease or defect which rendered him unable to conform to the requirements of law, and hence dangerous to himself and others. *State v. Quillar,* 683 S.W.2d 656, 658[1–4] (Mo.App.1984). The burden to prove that ultimate issue under that statute was reposed on the applicant invariably—whether for unconditional or conditional release. *State v. Johnson,* 634 S.W.2d 231, 232[1] (Mo.App.1982).

■ The movant Hoover contends that the evidence meets the burden the statute imposed, and since the proofs allow no inference that Hoover then presented a danger to himself or others, the right to conditional release—at least—was conclusively shown. That contention, however, attributes to the evidence [as our resume discloses] a tenor the record simply does not allow. That tendentious assessment of the evidence apart, the determination indispen-

---

4. Section 552.040 was rewritten in 1985, several months after the application for release under review was adjudicated. Section 552.040, as then extant, imposed the same elements of proof, the same quantum of proof, and the same burden of proof—whether the application was for *unconditional or conditional* release. *State v. Quillar,* 683, S.W.2d 656 (Mo.App.1984); *State v. Pederson,* 651 S.W.2d 639 (Mo.App.1983).

Section 552.040 as rewritten formulates separate procedures, evidential proofs, quantums of proof, and burdens of proof for *unconditional* release and for *conditional* release. Thus, for *unconditional* release, the reformulated statute provides that the court must consider, among relevant evidence and factors: "Whether or not the committed person *presently has a mental disease or defect.*" [§ 552.040.6(1), RSMo Cum. Supp.1985, emphasis added] That subsection provides also:

> The burden of persuasion shall be on the party seeking unconditional release to prove by a preponderance of the evidence that the person

for whom the unconditional release is sought *does not have,* and in the reasonable future is not likely to have, *a mental disease or defect rendering him dangerous to the safety of himself or others.* [emphasis added]

Section 552.040 as rewritten for *conditional release* omits the determination "[w]hether or not the committed person presently has a mental disease or defect" as a factor of evidence and adjudication, and imposes upon the *objector* to conditional release the burden to prove by *clear and convincing evidence* that the person for whom release is sought is likely to be dangerous to others while on conditional release." [§ 552.-040.11, RSMo Cum.Supp.1985, emphasis supplied] Thus, rewritten § 552.040 not only assigns the burden to the objector to prove by a more preponderant quantum that the applicant is "likely to be dangerous to others" while on conditional release, but enables conditional release although the applicant "presently has a mental disease or defect," so long as the release poses no likely danger to others.

sible to an order for conditional [as well as unconditional] release under § 552.040, then in effect, was not only—as Hoover argues—that the applicant presented no danger to himself or others, but also that the applicant was free from the mental disease or defect which rendered him dangerous. The tenor of the testimony of Dr. Bratkowski notwithstanding, it is the court, and not the witness physician, who must be convinced that no disease exists which renders an applicant dangerous. *State v. Quillar*, 683 S.W.2d at 658[1–4]. The evidence on that essential issue was hedged and qualified, and disbelieved. The contention Hoover makes for *conditional release* on the evidence under review has more validity under a scheme of statute where a mental disease or defect, although still subsistent, does not bear on the adjudication, and which allocates to the *objector* the burden to prove "by clear and convincing evidence that the person for whom release is sought is likely to be dangerous to others while on conditional release." That is the construct of present § 552.040. The statute which governed the application under review, however, cast on Hoover the burden to prove—to "clearly establish"—freedom from mental disease or defect "rendering him dangerous to the safety of himself or others or unable to conform his conduct to the requirements of law." And that, even for *conditional* release. Our review is under *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and the denial of release must be affirmed. *State v. Johnson*, 634 S.W.2d at 232[2].

Hoover contends also that, whether or not the adjudication was erroneous under the evidence, he is nevertheless entitled to *unconditional* release as a matter of law for failure by the court to conduct a timely hearing on his application. He refers to the text of then § 552.040.4: [5]

> The committed person or the superintendent of a hospital where the person is committed may file an application in the court where the person was tried, seeking an order releasing him conditionally or unconditionally. Copies of the application shall be served personally or by certified mail upon the superintendent of the hospital unless he files the application, the committed person unless he files the application, the director of the department of mental health, and the prosecuting or circuit attorney of the county where the committed person was tried and acquitted. *The committed person shall be released by order of the court unless either the superintendent of the hospital or the prosecuting or circuit attorney shall, within ten days after the service upon the last one of the two persons, file a written objection thereto. Within a reasonable period of time after such written objection is filed, which period shall not exceed sixty days unless otherwise agreed upon by the parties, the court shall hold a hearing* upon notice to the confined person, the superintendent of the hospital, the director of the department of mental health, and the prosecuting or circuit attorney of the county where the person was tried. [Emphasis added]

Hoover brought this *pro se* application for release on July 10, 1984, and within ten days, the prosecutor and the superintendent of the custodial facility entered formal objections. The hearing upon the application, however, was not convened until the elapse of more than sixty days. Hoover argues that the idiom of the subsection is mandatory: that the text, "the court *shall* hold a hearing" within a period which "shall not exceed sixty days" after the entry of objection, read together with the antecedent text, "[t]he committed personal *shall be* released by the order of the court" unless either the superintendent or prosecutor "*shall,* within ten days" file a written objection to the application for release, casts the entire provision as peremptory. The lapse of the mandatory sixty-day time, Hoover argues, also lapsed the jurisdiction

---

**5.** That section, as rewritten, essentially rescripts and incorporates that portion of the text into a new subsection 4.

of the court—not only over the cause, but also over the person of the applicant.

The effect a statute intends for its provisions is in every case a matter of construction. The terms *mandatory* and *directory* merely describe that effect. If literal observance of the provision is essential to the object of the legislation, then the provision is mandatory. If observance is matter of convenience and not of substance, then the provision is directory. *State v. Holmes*, 363 Mo. 760, 253 S.W.2d 402, 404[1] (banc 1952). The noncompliance with a mandatory provision has consequences: "It either invalidates the transaction or subjects the noncomplier to the consequences stated in the statute." 1A Sutherland, Statutory Construction § 25.03 (N. Singer rev.4th ed. 1985). The noncompliance with a directory provision incurs no such sure consequence. "Although directory provisions are not intended by the legislature to be disregarded, the seriousness of noncompliance is not considered so great that liability automatically attaches for failure to comply." *Id.* see also *State v. Wynn*, 666 S.W.2d 862, 864[1, 2] (Mo.App.1984). The articulated rule holds: "[W]hen a statute provides what results shall follow a failure to comply with its terms, it is mandatory and must be obeyed. However, if it merely requires certain things to be done and nowhere prescribes the results that follow, such a statute is merely directory." *Garzee v. Sauro*, 639 S.W.2d 830, 832[1] (Mo. banc 1982).

This general canon is informed by another principle of statutory construction [as well as of public policy]: "A statute specifying a time within which a public officer is to perform an official act regarding the rights and duties of others is directory unless the nature of the act to be performed, or the phraseology of the statute, is such that the designation of time must be considered a limitation of the power of the officer." 1A Sutherland, Statutory Construction § 57.19 (N. Singer, rev. 4th ed. 1984). That is because "the public should not be made to suffer for the dereliction of public officers." *State v. Holmes*, 253 S.W.2d at 404[3]. Thus, a provision enacted " 'with a view merely to the proper, orderly and prompt conduct of the business' " by the public official, is directory and not mandatory. State ex inf. *Gentry v. Lamar*, 316 Mo. 721, 291 S.W. 457, 458[1] (banc 1927); *State v. Wynn*, 666 S.W.2d at 864[1, 2].

■ In the perspective of these principles, subsection 4 of § 552.040 embodies *both* mandatory and directory aspects, but in the continuum of a statutory objective. Chapter 552 establishes as a defense to a criminal prosecution the mental disease or defect of an accused at the time of the conduct alleged. The prosecutor may concede the issue and accept the plea, or may contest the issue and submit the defense to the trier of fact who may acquit the accused on the ground of mental disease or defect excluding responsibility. [§ 552.030, subs. 2, 6, 7]. In either event—whether for a mental disease or defect conceded or for a mental disease or defect adjudicated—the court *must*, thereupon, order the commitment of the accused to the department of mental health for "custody, care and treatment." [§ 552.030.2, § 552.040.1]. Further proceedings as to the confinement and release of the accused are thereafter governed "as provided in section 552.040." [§ 552.030.2]. The text of Chapter 552, next in sequence—§ 552.040, RSMo 1978, as then enacted—provided that "[n]o person shall be released from such commitment *until it is determined by the procedures provided in this section*" that the person committed was free, and was likely to remain free from mental disease or defect rendering the person dangerous to the safety of himself or others. The "procedures provided in this section," which exclusively governed release, are those delineated in subsection 4, the very subject of the contention on review.

It is the manifest purpose of Chapter 552 not to render for punishment for crime those, who although dangerous, from want of mental soundness are not accountable. It is also the purpose of Chapter 552 to keep in confinement an accused exonerated

of crime by reason of mental disease or defect until the danger such a want of responsibility poses to the public no longer exists. *State v. Davee*, 558 S.W.2d 335, 338 (Mo.App.1977). It is also the purpose of Chapter 552—evident from the provision of subsection 4 that any denial of an application for release "shall be without prejudice to the filing of another application after one hundred eighty days"—that commitment shall not extend beyond a condition of mental disease or defect still subsistent.

In a word, that legislation creates public and private rights, and then consigns them to public officers for exercise. The provisions of that enactment which relate to the exercise of those powers, therefore, are of the essence of the statutory purpose, and so are mandatory. *Kansas City v. J.I. Case Threshing Machine Co.*, 337 Mo. 913, 87 S.W.2d 195, 205[15–17] (1935); 2A Sutherland at § 57.14. That legislation also provides for the manner of the exercise of those powers. Those provisions relate, not to the essence of the statutory purpose, but to the procedure to accomplish that purpose, and so are directory. *State v. Holmes*, 253 S.W.2d at 404[1, 2]; 1A Sutherland at § 25.03.

The provision in dispute, subsection 4 of 552.040, shares that ambivalence. It enables a person in custody of the department of mental health under an acquittal based on mental disease or defect excluding responsibility to apply to the court of commitment for release. It provides also that the person committed *shall be released* by order of the court unless the superintendent of the custodial hospital or the prosecutor *shall* within ten days make written objection. It provides also that the court *shall hold a hearing* on the application for release within sixty days of objection. Hoover argues—and we iterate—that the directive to the court to release the person unless formal objection to release lodges within ten days is mandatory, and renders the directive next in sequence, that the court shall hold a hearing within sixty days of objection, also mandatory. Hoover argues that since both directives are man-

datory, noncompliance with either necessarily entails the same consequence—release.

The argument slights the statutory objective and the role of each directive of subsection 4 to accomplish that objective. The purpose of chapter 552, once a person accused of crime is acquitted by reason of mental disease or defect excluding responsibility, is to retain that person in custody until "it is determined by the procedures in this section [subsection 4]" that the person does not have a mental disease or defect rendering him dangerous—and cognately, that the person shall not remain in commitment after the condition of mental disease or defect has lapsed. Section 552.040.1, RSMo 1978, then in effect; *see* n. 4. The fact of freedom from mental disease or defect [as was the fact of mental disease or defect which mandated commitment] may be conceded or adjudicated. In either case, the fact of freedom from mental disease or defect once established, the consequence of release must follow. That is the essence of the "thing to be done under the statute," *State v. Holmes*, 253 S.W.2d at 404[1], and noncompliance incurs the liability of release. *Garzee v. Sauro*, 639 S.W.2d at 832[1]; Sutherland, at § 25.03. The directive of subsection 4:

> [t]he committed person shall be released by order of the court unless either the superintendent of the hospital or the prosecutor or circuit attorney shall, within ten days after the service upon the last one of the two persons, file a written objection thereto

is mandatory, therefore, and noncompliance by the public authority—by lack of timely objection—concedes the fact of freedom from mental disease or defect and incurs the consequence of release.

Timely objection was lodged by the superintendent and the prosecutor to the Hoover application for release, however, so that directive cannot operate to release Hoover unless [as the argument goes] the other directive—that the *court shall hold a hearing* on the application for release within sixty days after objection—also is mandatory so that noncompliance is also fraught with consequence. The breach of

that directive—that the court shall hold a hearing within sixty days—however, incurs no consequence. The phraseology of the subsection imposes no limitation on the power of the public officer [here, the court] to act after the lapse of sixty days, nor a liability for the dereliction. That directive, rather, relates to the manner of exercise of the power the enactment vests in the public officers, and provides a regular, orderly and convenient procedure for its exercise. That component of subsection 4 is directory, not mandatory. It is sufficient if the compliance with procedure, albeit tardy, substantially subserves the statutory purpose without jeopardy to any substantial right. State ex inf. *Gentry v. Lamar*, 291 S.W. 458[1]; 1A Sutherland at § 25.03, p. 442. The tardy adjudication of the Hoover application for release did not prejudice a substantial right.[6]

The judgment is affirmed.

All concur.

---

6. The right which accrues to an applicant under the directive of subsection 4 that the court shall hold a hearing on an application for release within sixty days of objection is a right of procedure, and not of substance—as by a writ of mandamus to compel the right to a hearing. Rule 94. In fact, Hoover brought a *pro se* proceeding for writ of mandamus in this court [Hoover v. State, WD 36347] to compel the circuit judge to conduct a hearing on the application under review, after sixty days had lapsed from the time of objection. The petition was rejected for want of proper notice to the adverse parties. Rule 84.24.