**In re The Matter of Richard HANDY, Respondent,**

**v.**

**William HOLCOMB, Superintendent, Fulton State Hospital, Appellant.**

**No. WD 41029.**

Missouri Court of Appeals, Western District.

May 30, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for appellant.

Donald L. Catlett, Public Defender, Jan King, Asst. Public Defender, Jefferson City, for respondent.

Before KENNEDY, C.J., Presiding, and NUGENT and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

This is an appeal from an order granting Richard Handy a conditional release from the Fulton State Hospital. Handy was in that mental health facility because of pleas of not guilty because of mental disease or

defect to first degree assault charges. Section 552.030.2, RSMo.1986 (All further statutory references will be to RSMo.1986). Mr. Holcomb, the Superintendent of the Fulton State Hospital (appellant), contends that the trial court erred in granting the respondent Handy's conditional release because it failed to determine that Handy was not likely to be dangerous to others while on conditional release. Review of the judgment granting the conditional release is under *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The actual implementation of the release has been stayed, pending appeal.

Although the appellant's point on appeal concerns the sufficiency of the evidence supporting the patient's conditional release, this case concerns a first time construction of a substantial 1985 amendment to § 552.040. In general, § 552.040 sets out the procedures which must be followed for hearings on any release of a person committed because of acquittal due to mental disease or defect.

Subsections four through ten of § 552.040 apply to an application by the committed person for his absolute or *unconditional* release or discharge from the department of mental health. Among the factors to be considered are presence in the person of mental disease or defect, whether the person is dangerous to self or others and whether he is dependent on drugs. "The burden of persuasion shall be on the party seeking unconditional release to prove by a preponderance of the evidence that the person for whom unconditional release is sought does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering him dangerous to the safety of himself or others." § 552.040.6.

As to a *conditional* release from the hospital, § 552.040, prior to 1985, merely provided that no person could obtain a release without showing he did not or would not in the reasonable future have a mental disease or defect rendering himself dangerous.

The prior version of § 552.040, RSMo. 1978, contained no express provision concerning the burden of proof or persuasion as it relates to an application for a conditional or an unconditional release. By court interpretation, the burden of persuasion in the trial court was on the committed person. *State v. Pedersen*, 651 S.W.2d 639, 641 (Mo.App.1983).

Then in 1985, the legislature addressed who had the burden of persuasion in a conditional release case. It enacted § 552.040.11 which reads:

11. At a hearing to determine if the committed person should be conditionally released, the court shall consider the following factors in addition to any other relevant evidence:

(1) The nature of the offense for which the committed person was committed;

(2) The person's behavior while confined in a mental health facility;

(3) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(4) The nature of the person's proposed release plan;

(5) The presence or absence in the community of family or others willing to take responsibility to help the defendant adhere to the conditions of the release; and

(6) Whether the person has had previous conditional releases without incident. The *burden of persuasion* shall be *on the party opposing release* to prove by clear and convincing evidence that the person for whom release is sought is likely to be dangerous to others while on conditional release. (emphasis added.)

One of the effects of that amendment to this section was to change the burden of persuasion for a conditional release from the committed person to the party opposing the release. However, subsection thirteen, which reads: "No committed person shall be conditionally released until it is determined that the committed person is not likely to be dangerous to others while on

conditional release," facially creates a disharmony in the conditional release law. Subsection 11 puts the burden on the party opposing the release to prove by clear and convincing evidence the committed person is likely to be dangerous, while subsection 13 of the same section states no committed person can be released until a determination is made by the trier of fact the person is not dangerous. The interplay of those two provisions can create an interesting result. If the hospital submits no information to the trial court as to the patient's dangerousness then it has not met its burden under § 11. Yet, the patient still cannot be released until it is determined that the requirement of § 13 is met; namely, that the committed person is not likely to be dangerous.

The use of such tools of statutory construction such as ascertaining legislative intent from the plain meaning of the words, *State v. Kraus*, 530 S.W.2d 684, 685 (Mo. banc 1975) and giving meaning to each word, *State ex rel. Missouri State Board of Registration for Healing Arts v. Southworth*, 704 S.W.2d 219, 225 (Mo. banc 1986), are not helpful in making sense out of the totality of § 552.040.

A recent decision from this court provides some background. In *State v. Hoover*, 719 S.W.2d 812 (Mo.App.1986), it was said:

> It is the manifest purpose of Chapter 552 [RSMo.1978] not to render for punishment for crime those, who although dangerous, from want of mental soundness are not accountable. It is also the purpose of Chapter 552 to keep in confinement an accused exonerated of crime by reason of mental disease or defect until the danger such a want of responsibility poses to the public no longer exists.

*Id.* at 816–17.

With this balancing of the different interests involved in cases involving commitments under Chapter 552, this court, thanks to the thoughtful briefs of the parties, now sets out the procedure for a conditional release under § 552.040:

■ 1) A committed person must make more than a bare assertion in the petition for release that, among other things, he is not dangerous to others.[1] The person must present sufficient evidence to make a prima facie showing on that element. To carry that burden, the applicant must remove this case "from the realm of rank conjecture and surmise and to establish it by substantial evidence of probative value, or by inferences reasonably to be drawn from the evidence." *Bridgeforth v. Proffitt*, 490 S.W.2d 416, 422 (Mo.App.1973).

2) Once the committed person makes a prima facie case, the burden of persuasion is on the objecting party, here the hospital or the department, to prove by clear and convincing evidence that the person is likely be dangerous to others while on conditional release. If the objector fails on that requirement, the court is justified granting a conditional release.

Applying the above set of ground rules the relevant facts of Handy's case will be recounted and a disposition made of this case.

In 1981, Handy made two separate attempts to enter the Western Missouri Mental Health Center in Kansas City in order to free a female patient. During the first attempt, Handy assaulted a guard with a pocket knife. On the second occasion, he brandished a broken beer bottle.

At the hearing, the appellant (also representing the public safety interest) presented one witness, Dr. Elmer Jackson. Jackson is a physician employed at Fulton State Hospital. He was also acting chief of staff. Jackson was familiar with Handy's case. He had met with the patient on at

---

**1.** It is interesting to note that the rewritten version of section 552.040 "not only assigns the burden to the objector to prove by more preponderant quantum that the applicant is 'likely to be dangerous to others' while on conditional release, but enables conditional release although the applicant 'presently has a mental disease or defect,' so long as the release poses no likely danger to others." *State v. Hoover, supra,* 814 n. 4.

least three different occasions prior to trial. Jackson testified that Handy was

> well oriented to time, place, and person. His mood was level. His memory was intact for recent and remote. There were no distortions in his conversation. He was reality oriented. His IQ is at least average, 100 or more. He had no signs of ... organic brain disease, and he did not appear to be psychotic. The, the fact there'd been no hallucinations since '85, in the past three years, on medication, and he is on lithium three times a day ... his mental status is fairly normal, average at this time.

The doctor went on to state that the patient had not caused any problems at the hospital in the last few months. The lithium was being taken voluntarily and that Handy's mental illness was in remission. Finally, Jackson disclosed that he would not oppose a conditional release, if appropriate conditions were placed on Handy and if he was provided with a properly structured environment.

After it was made clear that Jackson knew Handy wanted to live with his cousin, the following questions were posed to Dr. Jackson and he answered them accordingly.

> Q. [Question] He [Handy] would be [sic] not use alcohol or drugs and would not own, use, or carry any weapons. He would not go—and he will go to an outpatient clinic for medication and counseling. Do you believe that, in your opinion, Dr. Jackson, that Mr. Handy is, is prepared for a conditional release at this time?
>
> A. [Answer] Well, if the conditions as set out were carried out, but again, we have not investigated any of that. And this would be in the Kansas City area. The active care worker, we would like to contact him, and have him check the Pleasant Hill and also be able to set up appointments. I would assume that they'd be at Western Missouri....
>
> Q. [Question] Well, do you believe that there are additional conditions that

should be attached to the release program for this patient, were the Court to order he may be released?

> A. [Answer] Well, the—certainly the no alcohol or drinking, I think, is very important and for him to continue contact with the mental health facility would also be extremely important.

Handy testified on his own behalf. He claimed that if released he would continue on lithium, go to an outpatient clinic, and that he would not take non-prescription drugs or alcohol. He claimed that he would live with his cousin in Pleasant Hill, Missouri. He also stated that he would seek work at a wood processing plant. He admitted under cross examination that in January of 1988, he was put in four-point restraints because he threw a chair across a room at St. Joseph State Hospital. That was not the first time Handy was put in steel restraints, in 1984 he spent seven months in such restraints due to extreme aggressiveness.

The trial court found that Handy's mental illness was in remission and that he no longer presented a substantial likelihood of danger to others. Conditional release was granted upon the following conditions:

> One, Petitioner [Handy] reside with Mary Pearson, 118 S. Campbell, Pleasant Hill, Missouri. Two, Petitioner not use non-prescription drugs or alcohol. Three, Petitioner take medication as prescribed by his physician. Four, Petitioner take outpatient treatment in Western Missouri Mental Health Center, Kansas City, Missouri. Five, Petitioner not own or carry any weapons. Six, Petitioner obtain employment within 30 days of release and maintain same. Seven, Petitioner keep all appointments with forensic after-care worker. Eight, Petitioner sign medical releases to give forensic after-care worker access to Petitioner's medical records and keep same up to date.

■ While it is true that Dr. Jackson did not state the "magic words"—that Handy was not likely to be dangerous to others while on conditional release, Handy none-

theless made a prima facie case. It can be inferred from Jackson's statement (that he would not oppose the release if appropriate conditions were set up) that he felt the patient was not likely to be dangerous to others while on conditional release. In this instance, the acting Chief of Staff of the committed person's hospital was familiar with the patient's condition and past behavior. Additionally, the doctor had interviewed the Handy a week before trial. Given those circumstances, the burden of persuasion shifted to the party opposing release to prove by clear and convincing evidence that Handy was likely to be dangerous to others while on conditional release. The appellant did not meet that burden.

A later hearing was held to set aside the previous order granting Handy's conditional release. The reason for that hearing was that Mrs. Pearson (the cousin with whom Handy was supposed to live) no longer resided in Pleasant Hill, Missouri. At the time of the hearing, she lived in a nursing home recovering from a broken hip. The house located in Pleasant Hill had been sold to Pearson's children who refused to let Handy live there.

Ms. Franklin, Handy's social worker, testified about a residential care facility in Kansas City, the Rustic Inn. Handy suggested the Rustic Inn as an alternative to living with his cousin. Franklin objected to the placement of Handy in the Rustic Inn because the facility was not highly supervised. Franklin felt that if Handy were to be released, he should start in a program where his activities would be more closely supervised. Franklin did mention that the state had places which would provide Handy with such supervision. If Handy were to be released, Franklin suggested it be to a program which supervised him both in the facility and when he participated in community activities. She did not, however, look into that option. She did not know of any facility that would accept Handy.

Franklin testified that the Rustic Inn would not accept Handy because of his history of drug and alcohol abuse and the patients history of not taking his medication. The administrator of the Rustic Inn felt that this non-compliance led to Handy's anti-social behavior.

As to Handy's behavior, since the first hearing, Franklin stated that after Handy's conditional release was granted the hospital switched his medication from liquid lithium to the drug in a tablet form (in preparation for his departure from the facility). During that week he became more easily upset. Franklin observed that Handy was hostile and felt that the hospital staff was conspiring against him.

William Wilkinson, a psychiatrist employed at Fulton State Hospital, also testified. He stated that he changed Handy from the tablet form of lithium back to the liquid form when someone "implied" that Handy was not taking his tablets. The psychiatrist testified that Handy was more hostile and paranoid during the period between the two hearings, but he was not irrational.

Handy also testified at the second hearing. He claimed that after he learned there were problems with his conditional release, he raised his voice at people but never threatened them. He also refuted Wilkinson's testimony; he asserted that he did not stop taking his lithium tablets until he was switched back to the liquid form of the drug. Handy is willing to live in a boarding home.

The trial court modified the release order. It directed the Fulton State Hospital to find a suitable home for Handy within 30 days from the date of the hearing, August 15, 1988. That order was stayed pending this appeal.

Because it has been determined Handy established a prima facie case for his conditional release, only two questions remain. The first is whether any evidence adduced at the second hearing established that Handy has become dangerous to others since the first hearing. The second issue is whether the trial court erred in failing to

consider two important conditions of Handy's release—where he would live and who would supervise his daily activities.

 The first point may be disposed of quickly. It was already determined that Handy could be released, therefore the burden was on the state to show a changed condition warranting reversal. Deferring to the trial court's resolution of credibility, Rule 73.01, and considering "only those evidentiary facts and inferences favorable to the prevailing party." *St. Charles County v. McPeak,* 730 S.W.2d 611, 612 (Mo.App.1987), the point must be overruled.

 As for the trial court's failure to have before it the exact conditions of Handy's release, this court is guided in its decision by the language found in § 552.040. Section 11 of that statute states clearly that the court shall consider the following factors in addition to any other relevant evidence ... the presence or absence in the community of family or others willing to take responsibility to help the defendant adhere to the conditions of release. § 552.040.11(5) (emphasis added). The court obviously took those factors into account. It considered evidence concerning where the aunt was residing, how her children felt about letting Handy live in the aunt's house, and about alternative facilities. It knew full well that no one wanted to take responsibility for Handy, nonetheless the court felt compelled to force hospital staff's hand by requiring them to find him a home. At first blush this approach seems unfair, to force the department to fashion a suitable place for Handy. The alternative is forcing a patient, who is not dangerous to others, to stay in the facility without chance of release, simply because he has no reasonably suitable place to live.

Although the trial court's holding, which leaves the conditions of release up to the state for compliance, causes the court some concern under the facts here, this court cannot say with definite and firm convic-tion the judgment was wrong. *Murphy v. Carron, supra,* 536 S.W.2d at 32. The stay order will be lifted as of the date of the mandate in this cause, and the state will have 30 days to comply with the trial court's judgment, which is affirmed. No costs.