**Donald MARSH, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 51829.**

Missouri Court of Appeals,
Western District.

Feb. 25, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 1997.

---

1. Rule references are to Missouri Rules of Court (1996).

Mark C. Evans, Asst. Public Defender, Fulton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Loren T. Israel, Asst. Atty. Gen., Kansas City, for respondent.

Before SMART, P.J., and SPINDEN and ELLIS, JJ.

ELLIS, Judge.

Donald Marsh appeals from the denial of his application for conditional release from Fulton State Hospital, § 552.040.[1]

Marsh was found not guilty by reason of mental disease or defect of first degree murder, § 552.030. Accordingly, on June 18, 1992, he was committed to the Department of Mental Health of the State of Missouri for custody, care, and treatment.

On May 12, 1995, Marsh filed an application for conditional release from the Fulton State Hospital with the Probate Division of the Callaway County Circuit Court, pursuant to § 552.040. A hearing on that application was had on July 31, 1995. Dr. Armando Ponce, Marsh's treating psychiatrist at Fulton, was the sole witness to testify at the hearing. The State presented no evidence. Following the hearing, the court concluded that Marsh was not mentally ill, but denied his application based on the lack of clear and convincing evidence that, if released, he would not be dangerous to others. Marsh appeals the denial of his application.

■ In his first point on appeal, Marsh challenges the denial of his application for conditional release on due process grounds. Marsh contends that only those suffering from a mental disease or defect may be detained in a mental hospital. Because the court found that he was not mentally ill, Marsh claims he was detained at Fulton in violation of his due process rights.

When a criminal defendant establishes by a preponderance of the evidence that he is not guilty of a crime by reason of insanity, the Constitution permits the government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society.

*Jones v. United States,* 463 U.S. 354, 368, 103 S.Ct. 3043, 3052, 77 L.Ed.2d 694 (cited with approval in *State v. Tooley,* 875 S.W.2d 110, 112 (Mo. banc 1994)).

The purpose of Chapter 552 is to keep those exonerated of responsibility for their crime by reason of a mental disease or defect confined until they no longer pose a danger to society. *State v. Hoover,* 719 S.W.2d 812, 817 (Mo.App. W.D.1986). Pursuant to § 552.040.9, a criminal defendant acquitted by reason of mental disease or defect and committed to the custody of the Department of Mental Health may file an application with the court for a conditional release. *State v. Dudley,* 903 S.W.2d 581, 583 (Mo.App. W.D. 1995).[2]

---

**1.** All statutory references are to RSMo 1994, unless otherwise noted.

**2.** The statutory authority and procedures for a court to grant the person a conditional release

■ Although § 552.040 does not specifically require the court to make a finding that the person still suffers from a mental disease, such a finding is necessary to satisfy the due process requirements of the United States Constitution. *Stallworth v. State*, 895 S.W.2d 656, 658 (Mo.App. W.D.1995). Due process forbids the continued confinement of an individual acquitted by reason of insanity after the individual no longer suffers the mental disease or defect. *Stallworth*, 895 S.W.2d at 658 (citing *Foucha v. Louisiana*, 504 U.S. 71, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). This court has expressly held "it is necessary for a court to make a finding that an insanity acquittee is suffering from a mental illness or defect before it can order that such person shall remain in an mental institution." *Styles v. State*, 838 S.W.2d 10, 11 (Mo.App. W.D.1992).

■ "A bench tried judgment which reaches the correct result will not be set aside even if the trial court gives a wrong or insufficient reason for its judgment." *Graue v. Missouri Property Ins. Placement Facility*, 847 S.W.2d 779, 782 (Mo. banc 1993). The trial court's decision will be reversed only if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Appellate courts must exercise caution in setting aside a judgment as being "against the weight of the evidence," and should do so "with a firm belief that the decree or judgment is wrong." *Id.* However, when the record engenders a firm belief that the judgment is wrong, the reviewing court may weigh the evidence including, of necessity, evidence and all reasonable inferences drawn therefrom, which is contrary to the judgment. *Hancock v. Secretary of State*, 885 S.W.2d 42, 46 (Mo.App. W.D.1994); *State ex rel. Rice v. Bishop*, 858 S.W.2d 732, 737 (Mo.App. W.D.1993); and *Phipps v. Sch. Dist. of Kansas City*, 645 S.W.2d 91, 96 (Mo.App. W.D.1982).

■ In the case at bar, the trial court found Marsh was no longer suffering from a mental illness. However, a thorough review from a mental health facility are set forth in

of the record leaves this court with a firm belief that such finding is wrong, and is against the weight of the evidence.

■ An acquittal based on mental illness carries with it an inference of continuing mental disease or defect. *Dudley*, 903 S.W.2d at 582. Similarly, § 552.040 "impliedly recognizes that a person seeking conditional release is still suffering from a mental disease or defect." *Styles*, 838 S.W.2d at 11. Hence, Marsh bore the burden of proving he was no longer suffering from a mental disease or defect. *Styles v. State*, 877 S.W.2d 113, 114 (Mo. banc 1994).

The only evidence presented by Marsh was the testimony of Dr. Ponce, his psychiatrist of three months. Dr. Ponce admitted that he had not fully reviewed the reports surrounding the crime which resulted in Marsh's commitment, but testified that Marsh had told him that his brother had given him some medication that caused him to be delusional and confused, and that he had "cut open his mother's chest in an attempt to help her." Although Dr. Ponce did not conduct the pretrial examination, he agreed with the pretrial examiner who opined that Marsh was mentally ill at the time of the offense.

Dr. Ponce testified on direct examination that Marsh did not, at the time of the hearing, have a mental illness. However, this evidence must be viewed in conjunction with the clarifying testimony given by Dr. Ponce on cross-examination and Marsh's history. On cross-examination, Dr. Ponce testified that Marsh's mental illness was actually in remission and that, to his knowledge, no one could determine what brought about the remission. Dr. Ponce likewise testified that he could not be certain that Marsh would remain in remission. More importantly, in testifying as to Marsh's insight into his condition, Dr. Ponce declared that Marsh "**may not have insight into the cause of the mental illness.**" The following colloquy from the cross-examination of Dr. Ponce typifies the uncertainty and imprecision of his testimony.

Q. [The State]: You testified that he did not have a mental illness. Is it cor-

§ 552.040, generally.

rect to say that he may have a mental illness, but you see no symptoms of that mental illness? [3]

A. [Dr. Ponce]: Yes, sir. That's correct.

Q. And that's typically what we would call in remission?

A. Yes, sir.

Q. And is it in remission as a result of medication?

A. I'll be honest with you, I don't really know. Because he—he did clear up, and I don't think anybody knows why he cleared up. At least I don't.

Q. If you don't know why he went into remission, how do you know he's going to stay in remission?

A. Well, I am not saying I know that he would stay in remission. All I know is he's not on any medication and he shows no symptoms.

Q. Is it true that if you knew why he was in remission, you could more accurately say whether he would stay in remission.

A. Yes, sir.

Dr. Ponce testified that a mental illness can completely go away, to the extent of showing no symptoms, and then reemerge. Just such a situation occurred when Marsh was committed to Fulton, for the first time, after perpetrating a series of violent crimes, including sodomy. After a short stay at Fulton, Marsh was determined to have no major mental disorder and released. Subsequent to his release, his mental illness reemerged and he brutally killed his mother. As if assuming this was a pattern, Dr. Ponce testified that he was not sure what type of group home Marsh should be released to, but that "... as long as he goes to a place where there is structure, where we could keep a eye on him, make sure he doesn't re-offend, he doesn't get sick, **and when he does,** he can come back and it will be alright." (emphasis added).

Dr. Ponce's testimony is replete with uncertainties. And, taken in context, it seems clear Dr. Ponce was saying only that Marsh's mental illness is in remission.[4] Moreover, Dr. Ponce never identified the mental illness from which Marsh suffers; nor did he identify or even speculate as to the triggering or primary stressors causing Marsh's disease. *See Grass v. Nixon,* 926 S.W.2d 67, 70 (Mo. App. E.D.1996). Dr. Ponce further failed to address the situations or stressors Marsh should avoid while on release, aside from alcohol and drugs. *Id.* Although Dr. Ponce acknowledged Marsh's history of alcohol and drug abuse and opined that Marsh's mental illness would probably reemerge if he were to drink alcohol or use drugs, Dr. Ponce did not attribute Marsh's mental condition to his abuse of these substances. Similarly, Dr. Ponce made no suggestions for treatment or prevention of Marsh's illness while on release. While the proposed conditions for Marsh's release were entered into evidence at the hearing, they appear to be a generic set of conditions, some of which apply to Marsh some of which do not. Dr. Ponce admitted at the hearing that he had not drafted a set of proposed conditions tailored specifically to the needs of Marsh's illness.

Moreover, Dr. Ponce openly admitted his ignorance of the facts surrounding the remission of Marsh's illness. As Dr. Ponce's testimony reflects, he was unable to offer any explanation, whatsoever, for the remission of Marsh's illness, or to speculate as to how long this remission might last. Lastly and most noteworthy, Dr. Ponce never testified that Marsh's mental illness had been cured; he merely stated that he had not seen any symptoms of the mental illness over the last three months.

Marsh has already suffered at least one relapse in his condition with fatal results. Considering the uncertainties of Dr. Ponce's testimony, and viewing the entire record in proper context, we are left with a firm belief that the trial court's finding that Marsh is

**3.** Dr. Ponce acknowledged that, even though in this case he said Marsh had no mental illness, when asked the same question in other cases, he usually says the patient's mental illness is in remission.

**4.** As generally used, remission refers to "a diminution or abatement of the symptoms of a disease; also the period during which diminution occurs." **The Sloane–Dorland Annotated Medical–Legal Dictionary,** p. 611 (1987).

"not mentally ill" is against the weight of the evidence and therefore erroneous. *Murphy v. Carron*, 536 S.W.2d at 32. As a result, the trial court's ultimate ruling that Marsh's application for conditional release should be denied did not deprive Marsh of his Due Process rights under the United States Constitution. Point denied.

■ In his second point on appeal, Marsh claims the trial court erred in finding there was not clear and convincing evidence that he would not be dangerous to others if he were conditionally released in light of Dr. Ponce's testimony that Marsh was not likely to commit a violent crime against another person now or in the future.

A person suffering from a mental disease or defect, found not guilty of a violent crime on this ground, and committed to a mental health institution may file an application for a determination of whether he may be released conditionally. § 552.040.9. An insanity acquittee is not eligible for conditional release under § 552.040.9, unless the court first finds the person is not likely to be dangerous to others while on conditional release. § 552.040.11. The court must make this finding before it can deny an application for conditional release. *Stallworth*, 895 S.W.2d at 658.

■ The court must exercise extreme caution in contemplating the release of a person acquitted of murder on the basis of mental defect or disease, because "the risks are immense if an error is made." *Dudley*, 903 S.W.2d at 587. In an effort to ensure the safety of the public, those persons who commit particularly violent and reprehensible crimes against another, like murder, must meet a heavier burden in proving their entitlement to conditional release than those who perpetrate non-violent crimes. § 552.040.11. A person committed for a violent crime seeking conditional release bears the burden of persuasion to prove by clear and convincing evidence that he is not likely to be dangerous to others while on conditional release. § 552.040.11.[5] Clear and convincing evidence "instantly tilt[s] the scales in the affir-

mative when weighed against the evidence in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." *In re M.J.A.*, 826 S.W.2d 890, 896 (Mo.App. S.D.1992). The trial court makes the ultimate decision regarding whether, under all of the evidence, the individual has met his burden. *Dudley*, 903 S.W.2d at 584.

■ Marsh claims Dr. Ponce's testimony satisfies his burden of proof. However, Dr. Ponce's testimony on this issue also resonates with indecision. Regardless, Dr. Ponce's opinion is not dispositive; it is the court, not the treating physician, that determines whether the conditions for release have been satisfied. *State v. Davee*, 558 S.W.2d 335, 339 (Mo.App. S.D.1977).

When Dr. Ponce was initially asked on direct examination whether he believed Marsh was likely to commit a violent crime against another person, he responded, "It's hard to know. It—It depends on where he's going." After having read the proposed plans for conditional release, Dr. Ponce was again asked, "[i]f he goes to a place like that, do you believe that he is likely to commit a violent crime against another person?" Dr. Ponce answered,

"It's hard to say. Probably not, inasmuch as he shows no evidence of psychosis. I—The only reason we are opposed to his release is because of the seriousness of the offense .... we want to make sure that where he goes, it'll be safe for him and everyone else, obviously."

However, on cross-examination the following exchange took place:

Q. [The State]: If a mental illness has gone away so that you can no longer see it—

A. [Dr. Ponce]: Yes, sir.

Q. —but is still likely to reemerge, would that person be dangerous as a result of mental illness?

A. If and when it reemerges, yeah, they—they could be.

\* \* \* \* \* \*

---

5. A person committed for a non-violent crime, on the other hand, must prove he does not pose a

danger to others by a preponderance of the evidence. § 552.040.11.

Q. Are you aware of the sodomy he is alleged to have committed as a result of mental illness?

A. That was in the record. Yes, sir.

Q. He alleged—Are you aware of the fact that he killed his mother allegedly as a result of mental illness?

A. Yes, sir.

Q. Do you consider those two things in determining whether or not he would be violent if his mental illness re-emerged?

A. Yes, sir. I—I have.

Q. And what does that cause you to believe?

A. Well, if—if he becomes mentally ill, then he would pose a danger to himself, if not others.

Evidence of Marsh's prior drug and alcohol abuse was introduced at the hearing, but Dr. Ponce did not attribute Marsh's mental illness to such abuse. However, Dr. Ponce admitted that he could not accurately predict whether Marsh's mental illness would reemerge if he were to use alcohol or drugs, but conceded it probably would. He further testified that, if Marsh's mental illness did reemerge as a result of alcohol or drug abuse, he would be dangerous. Although the "Proposed Conditions of Release" submitted to the trial court contained a provision stating that Marsh would not use illicit drugs or alcohol, no testimony was adduced regarding the present state of Marsh's drug and alcohol abuse, the treatment he had previously received for his abuse, or his accessibility to these substances were he released to a group home. Further, there was no evidence that a family or community member would help Marsh abstain from these substances.

The legislature has provided six non-exclusive factors the court must consider, along with any other relevant evidence, in determining whether Marsh should be conditionally released:

(1) The nature of the offense for which the committed person was committed;

(2) The person's behavior while confined in a mental health facility;

(3) The elapsed time between the hearing and the last reported unlawful or dangerous act;

(4) The nature of the person's proposed release plan;

(5) The presence or absence in the community of family or others willing to take responsibility to help defendant adhere to the conditions of the release; and

(6) Whether the person has had previous conditional releases without incident.

*Grass v. Nixon,* 926 S.W.2d at 71; § 552.040.11.[6]

This is not Marsh's first crime, nor his first period of confinement at Fulton. Marsh was previously committed to Fulton for a series of violent crimes, including sodomy. Following a very brief period of confinement, he was discharged with "no major mental disorder." This release was not without incident. § 552.040.11(6). Marsh subsequently murdered his mother in a particularly heinous fashion. § 552.040.11(1).[7] Marsh applied for conditional release a mere three years after murdering his mother. § 552.040.11(3).

Since his confinement at Fulton on April 11, 1995, Marsh has exhibited some resistance to the treatment of his illness. § 552.040.11(2). On April 26, 1995, Marsh refused referral to the problem-solving group, contending his only problem was with alcohol. Marsh has also refused work therapy, claiming that his music is his work.

Marsh's proposed Conditions of Release would obligate him to: (1) receive psychiatric/medication follow-up care as an outpatient at a designated Program; (2) take medication as prescribed; (3) attend and participate in all clinics, programs, and daytime activities recommended or arranged for him; refrain from drug or alcohol use; (4) not possess firearms or weapons; and, (5) seek admission to a mental health or substance abuse facility for treatment if mental illness

---

**6.** These factors are non-exclusive, and do not alter Marsh's burden of proving his lack of dangerousness by clear and convincing evidence. *Grass v. Nixon,* 926 S.W.2d at 71; **§ 552.040.11.**

**7.** Marsh was charged with first degree murder.

becomes exacerbated or relapse occurs. § 552.040.11(4). Pursuant to this agreement, if Marsh were to violate these conditions at any time, his conditional release may be revoked. There was no evidence adduced at the hearing indicating whether Marsh had community or family support to help him adhere to the conditions of the release. § 552.040.11(5).

"Murder demonstrates a mental illness that poses a risk to public safety of the highest order." *Grass v. Nixon*, 926 S.W.2d at 71. Hence, evidence of Marsh's mental condition must be of similar stature to constitute clear and convincing evidence. *Id.* In this case, Dr. Ponce did not opine as to the cause of Marsh's mental illness, generally, nor did he surmise as to the catalyst of his fatally violent behavior on the day of his mother's murder. Moreover, Dr. Ponce admitted he did not know whether Marsh's illness was controlled by pharmacological treatment, and could not provide an explanation for its remission. In sum, Dr. Ponce's testimony is wholly devoid of insight into the nature of Marsh's mental illness. Additionally, only three years had elapsed since the murder of his mother, and Marsh had been under Dr. Ponce's observation for a mere three months. Neither the understanding of the mental disease nor the amount of time that has passed since the offense permits a finding that Marsh is not likely to be dangerous to others to the statutorily prescribed degree of persuasion. *See Grass v. Nixon*, 926 S.W.2d at 71.

A review of Dr. Ponce's testimony, the evidence adduced on the six statutory factors, and Marsh's relatively short stay at Fulton all support the court's conclusion that Marsh failed to establish by clear and convincing evidence that this present period of non-violent behavior would continue such that the public would be safe from danger if he were conditionally released.

Finally, conditional release may not be granted unless the court specifically finds Marsh has met the following criteria:

(1) Marsh is not now and is not likely in the reasonable future to commit another violent crime against another person because of his mental illness; and

(2) Marsh is aware of the nature of the violent crime committed against another

person and presently possesses the capacity to appreciate the criminality of the violent crime against another person and the capacity to conform to his conduct to the requirements of law in the future. § 552.040.18.

■ Clearly, the evidence adduced at the hearing would not support a finding that Marsh is not now, or in the reasonable future, likely to commit a violent crime against another as a result of his mental illness. Dr. Ponce admitted he was unable to explain Marsh's present state of remission, or predict how long the remission will last. As Dr. Ponce's testimony indicates, the probability that Marsh would now, or in the reasonable future, commit a violent crime against another because of his mental illness depends on Marsh's supervision while on conditional release and his ability to refrain from drug or alcohol use.

■ With regard to Marsh's appreciation of the nature of his crime, Dr. Ponce testified that Marsh does not have complete insight into his mental illness. According to Dr. Ponce, Marsh has admitted the murder of his mother was wrong and understands it was a crime. Although Dr. Ponce believes Marsh would have the capacity to appreciate the criminality of his conduct and conform his conduct to the requirements of the law in a structured setting with supervision, he expressed concern over Marsh's tendency to attribute his crime entirely to the medication he says his brother gave him. This evidence will not support a finding that Marsh is aware of the nature or the criminality of his violent crime. Marsh's Point II is denied.

In summary, the trial court's ruling that Marsh is "not mentally ill" is against the weight of the evidence and is, therefore, erroneous. As a result, the Due Process requirements of the United States Constitution are not violated by the trial court's judgment denying Marsh's application for conditional release, and that judgment is hereby affirmed.

All concur.