**STATE of Missouri, Plaintiff–Respondent,**

v.

**Samuel J. ZINGRE, Defendant–Appellant.**

No. 22092.

Missouri Court of Appeals,
Southern District,
En Banc.

Dec. 10, 1998.

Jon Van Arkel, Springfield, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Hugh L. Marshall, Asst. Atty. Gen., Kansas City, for Respondent.

KENNETH W. SHRUM, Presiding Judge.

Samuel J. Zingre (Appellant) was committed to the Department of Mental Health in December 1987, after he was found not guilty of unlawful use of a weapon by reason of mental disease or defect excluding responsi-

bility. Thereafter, he filed for and received five conditional releases through the probate division of the Callaway County Circuit Court, but all such releases were revoked. This appeal arises from the denial of Appellant's request for an unconditional release pursuant to § 552.040.[1]

Appellant's principal point relied on maintains that the trial court erred in not granting him an unconditional release from his commitment because he proved by clear and convincing evidence that he is not suffering from a mental disease or defect that would make him dangerous to himself or others if released. This court disagrees. We affirm.

As in other bench-tried civil cases, denial of a § 552.040 application for release from commitment will be reversed only if there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32[1] (Mo. banc 1976); *Marsh v. State,* 942 S.W.2d 385, 388 (Mo.App.1997).

An acquittal because of mental disease or defect carries with it an inference of continuing mental illness. *Marsh,* 942 S.W.2d at 388[5]. Accordingly, a person committed under § 552.040 who seeks unconditional release must persuade the court by "clear and convincing evidence" that he or she "does not have, and in the reasonable future is not likely to have, a mental disease or defect rendering the person dangerous to the safety of himself or others." § 552.040.7,.9.

When unconditional release under § 552.040 is at issue, a trial court must "consider the following factors in addition to any other relevant evidence:

"(1) Whether or not the committed person presently has a mental disease or defect;

"(2) The nature of the offense for which the committed person was committed;

"(3) The committed person's behavior while confined in a mental health facility;

**1.** All references are to RSMo Cum.Supp.1996 unless otherwise stated.

"(4) The elapsed time between the hearing and the last reported unlawful or dangerous act;

"(5) Whether the person has had conditional releases without incident;

"(6) Whether the determination that the committed person is not dangerous to himself or others is dependent on the person's taking drugs, medicine or narcotics."

§ 552.040.7.

The only evidence presented by Appellant was his own testimony and that of Yvonne Corderio. Corderio, who has a master's degree in social work, was Appellant's "forensic case monitor" from June 1993 to November 1993 and from November 1995 to January 1997. It was Corderio's job to see Appellant monthly while he was on conditional release, talk to his case managers, verify whether he took prescribed medications, confirm that he attended specified treatment programs, check on his employment, and, in general, determine whether Appellant was meeting the objectives and conditions of conditional release. Corderio said Appellant did "okay" while on conditional release in 1996. During that period, she saw no "indication ... [Appellant] would be a danger to himself or to others." She conceded, however, that Appellant's conditional release was revoked in early 1997 after he spent thirty-two days in jail on a conviction stemming from an "altercation [he had] with a person at AA." Moreover, when asked if she recommended Appellant's unconditional release, she answered: "I really can't give an opinion on that right now." Continuing, Corderio said: "I would have to defer to ... the hospital. I'm not in the position to say ... somebody should be unconditionally released ... whatever my opinion might be." She explained she had nothing to do with Appellant's case from January 28, 1997, to the date of the hearing, December 27, 1997, nor had she reviewed any of his records for that period.

Appellant testified that in 1987 he was charged with displaying a knife in a threatening manner. This stemmed from an argument with his mother during which he picked up a kitchen knife and threatened to "cut [her] heart out." Concerning that behavior, Appellant said: "There was something wrong with me." Appellant said that as an "adolescent and ... young teen" he had "engaged in dangerous behavior" but insisted he had worked on changing "for almost twenty years." Appellant denied that he had a mental illness and claimed that his doctor lied about his [Appellant's] behavior at the hospital. He also denied being dangerous to others. When asked why his behavior would be different if fully released than what it had been under conditional release, Appellant replied: "Hopefully I won't ever use again, you know." Regarding hospital rules and his attitude toward such rules, Appellant answered: "I would not say that I'm unwilling to follow their rules at all. As a matter of fact I follow their rules most of the time." However, he did not "believe that all laws are good and should be obeyed all the time." Asked about his most recent "episode of violence," Appellant replied: "I guess if you define it as strongly as they do, that would have been when I slapped that cigarette out of that other guy's hand." The cigarette incident happened November 5, 1997, thirty days before the hearing.

David Hunter, M.D., a psychiatrist employed at Fulton State Hospital, said Appellant had been under his care since February 3, 1997. His testimony included the following. Appellant currently suffers from polysubstance dependence (cocaine and alcohol) and also borderline personality disorder and anti-social personality disorder. These diagnoses are classifications found in the diagnostic manual (DSM–IV) used by psychiatrists to classify mental diseases "in a consistent manner." In Dr. Hunter's opinion, Appellant's diagnoses qualify as mental diseases or defects within the meaning of Chapter 552. Appellant's most serious problem is his borderline personality disorder, especially when it involves psychotic episodes. Appellant's most recent psychotic episode was on November 5, 1997 (thirty days prior to hearing) when Appellant reported "visual hallucinations ..., specifically flashes of light." Also, Appellant "was somewhat paranoid and made a quote ... that he thought ... the devil might be involved." Overall, Appellant's current hospitalization featured "occasional periods of relative calm ... punctuated by episodes of assaults of other patients." Because of Appellant's "recent behavior and assaul-

tiveness ... his past record of failing on conditional releases" and "the fact that he does have a mental disease or defect," Dr. Hunter was of the opinion that Appellant was likely to be dangerous to himself and others if unconditionally released.

The trial court denied Appellant's request for unconditional release. This appeal followed.

■ A review of Dr. Hunter's testimony and the evidence adduced on the six statutory factors all support the court's conclusion that Appellant failed to establish by clear and convincing evidence that he and the public would be safe from danger if he were unconditionally released. Appellant's testimony that he did not believe he was mentally ill or that he would be dangerous if released is not proof of his entitlement to release. *See Foote v. State,* 650 S.W.2d 28, 29 (Mo.App. 1983). Appellant was not competent to diagnose himself. *See Morgan v. Rabun,* 128 F.3d 694, 698 (8th Cir.1997), *cert. denied,* — U.S. ——, 118 S.Ct. 1809, 140 L.Ed.2d 947 (1998). Nor did the testimony of case worker Corderio mandate reversal. She had not seen Appellant nor been involved in his case since January 1997. Moreover, she had no opinion on whether Appellant should be unconditionally released, saying that was a decision for the "hospital." In contrast, the State presented psychiatric evidence that Appellant was suffering from a mental disease or defect, required continued treatment and confinement, and posed a threat to society and himself if released. On this record, Appellant did not bear his burden of showing by clear and cogent evidence that he was free of a mental disease or defect that would make him dangerous to himself or others if released. Point I is denied.

■ Appellant's second point involves a motion that he filed two days before his release hearing. In the motion, Appellant asked the court to vacate its "previous [1987] acceptance" of his plea of not guilty by reason of mental disease or defect. He alleged that such acceptance was improper because it occurred without a finding by the court that Appellant was competent to proceed and enter a plea. The trial court denied the motion and Appellant's second point challenges that ruling as erroneous.

■ Appellant is improperly attempting to attack the original judgment of acquittal and commitment in this case. Appellant does not cite nor does our independent research reveal a provision in Chapter 552 or elsewhere that authorizes such a challenge or collateral attack in this proceeding. " 'A collateral attack is an attempt to impeach a judgment, whether interlocutory or final, in a proceeding not instituted for the express purpose of annulling the judgment.' " *Beil v. Gaertner,* 197 S.W.2d 611, 613[3] (Mo.1946) (citation omitted).

■ The exclusive purpose of a § 552.040.5–.9 proceeding is adjudication of eligibility for unconditional release from commitment. Annulling or voiding the underlying judgment of acquittal or order of commitment is not authorized in Chapter 552. Any attempt to avoid or annul this judgment must be brought in a separate case instituted exclusively for that purpose. *See Beil,* 197 S.W.2d at 613. Appellant's belated motion to vacate attempts to impeach the original judgment and order and is impermissible in this proceeding.

■ " 'Judgments are conclusive of the matters adjudicated and are not subject to collateral attack except on jurisdictional grounds.' " *State ex rel. Div. of Family Services v. Bullock,* 904 S.W.2d 510, 512[1] (Mo. App.1995) (citation omitted). "A court has 'jurisdiction' if it has judicial authority over the subject matter acted upon, judicial authority to act as to the persons before it, and judicial authority to render the order entered." *Id.* at 512[2]. Under this definition, the trial court had jurisdiction in 1987 when it accepted Appellant's plea and entered the commitment order. Appellant does not contend otherwise. Since the 1987 judgment and order are not subject to collateral attack in this case, the court did not err when it denied Appellant's motion to set them aside. Point II is denied.

The judgment is affirmed.

MONTGOMERY, J., and GARRISON, C.J., CONCUR.